BONNIE CURTIS, Plaintiff-Appellant, v. PHILIP G. LOFY *et al.*, Defendants-Appellees.

Fourth District    No. 4—08—0750

Opinion filed September 2, 2009.—Rehearing denied October 7, 2009.

William E. Hourigan, of Decatur, for appellant.

Scott E. Umland, of Fleming & Umland, of Peoria, for appellees.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In July 2001, plaintiff, Bonnie Curtis (Bonnie), filed suit against defendants, Philip G. Lofy and his mother Margaret Lofy, in Sangamon County case No. 01—L—249 (*Curtis I*). The lawsuit arose out of an accident that occurred in December 2000. In March 2005, the trial court granted Margaret's motion for summary judgment. In May 2005, Bonnie voluntarily dismissed the suit.

In May 2006, Bonnie refiled her lawsuit against Philip and Margaret in Sangamon County case No. 06—L—140 (*Curtis II*). In June 2006, the trial court dismissed the suit against Margaret on grounds of *res judicata*. In September 2008, the court dismissed the suit against Philip on grounds of *res judicata*. Bonnie appealed.

On appeal, Bonnie argues the trial court erred by (1) denying her motion for substitution of judge as of right, (2) granting summary judgment to Philip on grounds of *res judicata*, and (3) assessing sanctions of $253 against her attorney for failing to appear at a hearing. We affirm in part, reverse in part, and remand for further proceedings.

# I. BACKGROUND

This case arose out of an accident that occurred in the early morning hours of December 26, 2000. Bonnie was injured when she was struck on a public roadway by a vehicle owned by Margaret and driven by Philip. When struck, Bonnie was standing near a stalled vehicle belonging to Darrell Wilson.

## A. Bonnie's Original Lawsuit—*Curtis I*

In July 2001, Bonnie filed *Curtis I*. Although the record on appeal did not contain the record for *Curtis I*, this court took judicial notice of the record in *Curtis I* and supplemented the record on appeal. See, *e.g.*, *NBD Highland Park Bank, N.A. v. Wien*, 251 Ill. App. 3d 512, 520-21, 622 N.E.2d 123, 130 (1993) (noting that public documents, including court records, are subject to judicial notice).

Count I of Bonnie's first amended complaint alleged that Philip, acting as an agent and for the benefit of Margaret, owed a duty to Bonnie to exercise ordinary care for her safety. Bonnie alleged Philip breached that duty of care by (1) driving the vehicle with cannabis in his system, (2) failing to reduce speed to avoid an accident, (3) operating the vehicle in violation of a restriction for daylight driving only, (4) failing to apply the brakes when he saw or should have seen Wilson's vehicle and persons on the highway, (5) failing to alter course when he saw or should have seen Wilson's vehicle and persons on the highway, (6) failing to equip the vehicle with adequate brakes, and (7) failing to maintain a proper lookout. Bonnie alleged that as a result of Philip's negligent acts or omissions, she suffered severe injuries.

Count II incorporated the allegation that Philip was acting as Margaret's agent. Count II further alleged that Margaret knew or should have known that Philip was "under the influence of alcohol" and operating a vehicle at night in violation of the driving restriction listed on his driver's license.

In October 2004, Philip and Margaret filed a motion for summary judgment asserting that Bonnie had no evidence to support her allegations of negligent conduct, breach of duty, or proximate cause. Thereafter, in October 2004, Philip and Margaret filed motions *in limine* seeking to prohibit Bonnie from eliciting testimony or evidence that Philip (1) was driving at night notwithstanding a restriction on his driver's license limiting Philip to daytime driving only and (2) tested positive for cannabis in his bloodstream.

In November 2004, Sangamon County circuit judge Donald M. Cadagin entered a written order granting Philip's and Margaret's motions *in limine* regarding evidence of Philip's "use of cannabis" and driving on a restricted license. The trial court's order also granted

Philip and Margaret's motion for summary judgment on Bonnie's allegations regarding Philip's "use of cannabis" and violation of a driving restriction. The court granted Bonnie's request to file an amended complaint to conform to discovered facts. (Although the docket entry indicates the motions *in limine* were granted and the motion for summary judgment was denied, the written order controls. See, *e.g.*, *First National Bank of Sullivan v. Bernius*, 127 Ill. App. 3d 193, 196, 468 N.E.2d 188, 192 (1984) ("a docket entry is not the ultimate entry of the court's judgment in a civil case, at least when there is an additional entry to be made").)

In December 2004, Bonnie filed her amended complaint. Bonnie's amended complaint alleged that Margaret, as owner of the vehicle, and Philip, as her authorized agent operating the vehicle, did negligently operate the vehicle by (1) operating the vehicle too fast for conditions (count I), (2) failing to reduce speed to avoid an accident (count II), and (3) failing to take necessary evasive action to avoid an accident (count III).

In February 2005, Margaret filed a motion for summary judgment on the agency theory. Margaret asserted that even though her ownership of the vehicle created a rebuttable presumption of agency, the uncontested evidence rebutted that presumption.

In March 2005, Judge Cadagin granted Margaret's motion for summary judgment "as to [the] [a]gency theory." In May 2005, after the trial court denied Bonnie's request for a continuance of trial, Bonnie voluntarily dismissed the cause of action.

### B. Bonnie's Second Lawsuit—*Curtis II*

In May 2006, plaintiff refiled her complaint in *Curtis II*. Count I alleged that Philip negligently and recklessly operated a motor vehicle by failing to (1) reduce speed, (2) timely apply brakes, (3) alter course and speed, and (4) maintain a proper lookout. Count II alleged that Margaret failed to provide proper supervision of her vehicle by allowing Philip, while acting on her behalf, to recklessly and negligently operate the motor vehicle. Count II further alleged that Margaret owed a duty to ensure safe operation of her vehicle by her agent, Philip.

In June 2006, Margaret filed a motion to dismiss pursuant to section 2—619(a)(4) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2006)) asserting that in *Curtis I*, the trial court granted summary judgment in favor of Margaret. In July 2006, Sangamon County circuit judge Leslie Graves granted Margaret's motion to dismiss by way of docket entry. No written order, transcript, or bystander's report of the hearing is contained in the record on appeal.

Philip was not served with the summons in *Curtis II* until November 27, 2006. In December 2006, Philip filed a motion to dismiss pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2006)) and Supreme Court Rule 103(b) (177 Ill. 2d R. 103(b)) asserting that Bonnie failed to exercise reasonable diligence in obtaining service on him. In February 2007, the trial court denied the motion to dismiss by written order. No transcript or bystander's report of the hearing is contained in the record on appeal.

In May 2007, Philip filed a motion to compel asserting that Bonnie failed to answer interrogatories and a request to produce served upon her. In July 2007, following a hearing, the trial court entered a written order ordering Bonnie to produce, by July 26, 2007, all medical records after December 1, 2004. No transcript or bystander's report of the hearing is contained in the record on appeal.

In July 2007, Philip filed a motion to bar (1) evidence that Philip operated the vehicle with cannabis in his system, (2) evidence that Philip operated the vehicle in violation of the restriction that he only drive during the day, (3) testimony from witnesses not disclosed prior to the voluntary dismissal in May 2005, and (4) evidence of medical records or testimony from Dr. Steven Pineda regarding plaintiff's back surgery in 2004.

In September 2007, following a hearing, the trial court granted the motion to bar "as to paragraphs C & D." The record is unclear whether the court resolved the remaining issues. No transcript or bystander's report of the hearing is contained in the record on appeal.

Also in September 2007, Philip filed a motion for summary judgment asserting that Bonnie had no evidence that Philip breached a duty or that the breach was a proximate cause of Bonnie's injury. The motion was called for hearing in December 2007, but counsel for Bonnie did not appear. The docket entry for the hearing provides as follows: "Sanctions of $253.00 awarded to the [p]laintiff [*sic*] for [t]ravel [t]ime." The hearing was rescheduled.

On January 24, 2008, additional counsel for Bonnie entered his appearance. On January 25, 2008, counsel for Bonnie filed a motion for substitution of judge. On January 28, 2008, the trial court denied the motion for substitution of judge and denied Philip's motion for summary judgment. The court set the matter for a May 2008 trial.

In February 2008, Philip filed another motion for summary judgment. This motion was based on *res judicata* pursuant to the recent decision in *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467, 889 N.E.2d 210, 213 (2008) (holding that involuntary dismissal of the plaintiff's negligence claim and the plaintiff's subsequent voluntary dismissal of the remaining willful and wanton claim barred refiling of the willful

and wanton claim under the doctrine of *res judicata*). In July 2008, the trial court granted the motion for summary judgment by docket entry:

> "Plaintiff filed suit against [d]efendant in [case No.] 01—L—249 on July 30, 2001. The cause of action and the parties in the instant case and [case No.] 01—L—249 are identical. In [case No.] 01—L—249 the [c]ourt granted two separate [m]otions for [s]ummary [j]udgment in favor of [d]efendant. Plaintiff voluntarily dismissed [case No.] 01—L—249 on May 23, 2005. Plaintiff's voluntary dismissal of [case No.] 01—L—249 transformed these two rulings from nonappealable to final and appealable [o]rders. Plaintiff failed to timely appeal those adverse rulings subsequent to her voluntary dismissal. Under the [d]octrine of *[r]es [j]udicata*, any attempt to relitigate those issues as well as any other claims arising out of the accident are barred."

In September 2008, the trial court denied plaintiff's motion to reconsider.

This appeal followed.

## II. ANALYSIS

On appeal, Bonnie argues the trial court erred by (1) denying her motion to substitute judge as of right, (2) granting summary judgment to Philip on grounds of *res judicata*, and (3) assessing sanctions of $253 against her attorney.

### A. Trial Court Properly Denied Motion for Substitution of Judge

Bonnie argues the trial court erred when it denied her motion for substitution of judge as of right. Philip argues the trial court made multiple rulings on substantial issues prior to denying the motion.

■ Section 2—1001(a)(2) of the Code provides, in relevant part, as follows:

> "(a) A substitution of judge in any civil action may be had in the following situations:
>
> ***
>
> (2) Substitution as of right. When a party timely exercises his or her right to a substitution without cause as provided in this paragraph (2).
>
> (i) Each party shall be entitled to one substitution of judge without cause as a matter of right.
>
> (ii) An application for substitution of judge as of right shall be made by motion and shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, or if it is presented by consent of the parties." 735 ILCS 5/2—1001(a)(2) (West 2006).

■ A petition for substitution of judge as of right is untimely if filed after the judge has ruled on a substantive issue in the case. *In re Daniel R.*, 291 Ill. App. 3d 1003, 1014 684 N.E.2d 891, 898 (1997). The purpose of the rule is to prevent a litigant from "judge shopping" after forming an opinion that the judge may be unfavorably disposed toward her cause. *Daniel R.*, 291 Ill. App. 3d at 1014, 684 N.E.2d at 898. A ruling on a substantive issue is one that directly relates to the merits of the case. *Rodisch v. Commacho-Esparza*, 309 Ill. App. 3d 346, 350-51, 722 N.E.2d 326, 330 (1999). A motion for substitution may also be denied, in the absence of substantive ruling, if the movant had the opportunity to form an opinion as to the judge's reaction to her claims. *In re Estate of Gay*, 353 Ill. App. 3d 341, 343, 818 N.E.2d 860, 863 (2004).

The trial court has no discretion to deny a proper motion for substitution of judge as of right. *Rodisch*, 309 Ill. App. 3d at 350, 722 N.E.2d at 329. This court reviews a ruling on a motion to substitute *de novo*, and such review "should lean toward favoring rather than defeating a substitution of judge." *Rodisch*, 309 Ill. App. 3d at 350, 722 N.E.2d at 329. "Orders entered after a motion for substitution of judge has been improperly denied are void." *Illinois Licensed Beverage Ass'n v. Advanta Leasing Services*, 333 Ill. App. 3d 927, 932, 776 N.E.2d 255, 260 (2002).

■ Bonnie asserts that only procedural rulings and not substantive rulings were made prior to the motion for substitution of judge. Philip points to several rulings he claims constituted a ruling on a substantial issue, including the following: (1) the July 2006 order granting Margaret's motion to dismiss on grounds of *res judicata*, (2) the February 2007 order denying Philip's motion to dismiss for lack of due diligence, (3) the July 2007 order granting Philip's motion to compel, and (4) the September 2007 order granting Philip's motion to bar testimony from witnesses not disclosed and evidence of medical records or testimony from Dr. Pineda regarding Bonnie's back surgery.

This court agrees that the trial court's order granting Margaret's motion to dismiss on grounds of *res judicata* was a ruling on a substantial issue. See *Partipilo v. Partipilo*, 331 Ill. App. 3d 394, 398, 770 N.E.2d 1136, 1140 (2002) (holding that "[e]xamples of rulings on substantial issues include situations in which the trial court has ruled on a motion to dismiss, made pretrial rulings of law[,] or where the party moving for a substitution of judge has discussed issues with the trial judge, who then indicated a position on a particular point"). In fact, the ruling on that issue clearly alerted Bonnie to the trial court's position on *res judicata*, the basis on which the court ultimately dismissed Bonnie's case against Philip. See, *e.g., Bonnie Owen Realty,*

*Inc. v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 812, 821, 670 N.E.2d 1182, 1188 (1996) (holding that trial court's order denying a motion to compel was a motion on a substantial issue where the order indicated the court's opinion that extrinsic evidence would not be admissible to prove whether the insurer had a duty to defend; that decision foreshadowed the court's subsequent ruling "that extrinsic evidence would not be admissible for purposes of construing the insurance policies or determining whether [the] defendant had a duty to defend [the] plaintiff"). Consequently, the trial court did not err by denying Bonnie's motion for substitution of judge.

## B. Trial Court Erred by Granting Summary Judgment in Favor of Philip on *Res Judicata* Grounds

Bonnie next argues the trial court erred by granting summary judgment in favor of Philip on grounds of *res judicata*. We agree.

### 1. *Standard of Review Is De Novo*

Whether a claim is barred by *res judicata* is a question of law that we review *de novo*. *Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union Station Co.*, 358 Ill. App. 3d 985, 1000, 832 N.E.2d 214, 227 (2005); see also *Myers v. Illinois Central R.R. Co.*, 323 Ill. App. 3d 780, 783-84, 753 N.E.2d 560, 563 (2001) (the appellate court reviews grants of summary judgment *de novo*).

### 2. *History of the Interplay of Voluntary Dismissal and Res Judicata*

Section 2—1009(a) of the Code (735 ILCS 5/2—1009(a) (West 2004)) generally provides that a plaintiff may, at any time before trial or hearing begins, dismiss her action without prejudice. Section 13—217 of the Code permits a plaintiff who voluntarily dismissed her claim to refile the claim within the greater of one year or the remaining period of limitations. 735 ILCS 5/13—217 (West 1994); see *Hudson*, 228 Ill. 2d at 469 n.1, 889 N.E.2d at 214 n.1 (the version of section 13—217 in effect is the version that preceded the amendments of Public Act 89—7, which the Illinois Supreme Court found unconstitutional in its entirety).

Pursuant to the doctrine of *res judicata*, "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand[,] or cause of action." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389, 757 N.E.2d 471, 477 (2001). Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2)

identity of cause of action, and (3) identity of parties or their privies. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 335, 665 N.E.2d 1199, 1204 (1996). *Res judicata* bars not only the same claim in a subsequent suit but every matter that could have been offered to sustain the claim or demand. *Rein*, 172 Ill. 2d at 334-35, 665 N.E.2d at 1204.

A series of cases addressing the interplay between voluntary dismissal and *res judicata* affect the analysis of this case. Therefore, a summary of those cases is provided herein.

### a. *Rein v. David A. Noyes & Co.*

The Illinois Supreme Court addressed the interplay between voluntary dismissal and *res judicata* in *Rein*, 172 Ill. 2d 325, 665 N.E.2d 1199. In *Rein*, the plaintiff filed suit under various theories. The trial court dismissed the plaintiffs' rescission counts with prejudice on the ground that they were barred by the limitation period in section 13(D) of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1989, ch. 121½, par. 137.13(D)). *Rein*, 172 Ill. 2d at 329, 665 N.E.2d at 1202. The plaintiffs later voluntarily dismissed the remaining counts and appealed the dismissal of the rescission counts. *Rein*, 172 Ill. 2d at 330, 665 N.E.2d at 1202. The appellate court affirmed the dismissal of the rescission counts. *Rein*, 172 Ill. 2d at 330, 665 N.E.2d at 1202, citing *Rein v. David A. Noyes & Co.*, 230 Ill. App. 3d 12, 13, 595 N.E.2d 565, 567 (1992).

Approximately 19 months after the voluntary dismissal, the plaintiffs refiled their action, almost identical to the previous complaint, raising rescission claims and common-law claims. *Rein*, 172 Ill. 2d at 331, 665 N.E.2d at 1202. The trial court granted the defendant's motion to dismiss the entire complaint on grounds of *res judicata*. *Rein*, 172 Ill. 2d at 332, 665 N.E.2d at 1203. The appellate court affirmed. *Rein*, 172 Ill. 2d at 333, 665 N.E.2d at 1203.

The Illinois Supreme Court granted leave to appeal and affirmed, holding that *res judicata* barred the claims that were raised and could have been raised in the first lawsuit. *Rein*, 172 Ill. 2d at 336-37, 665 N.E.2d at 1205. The supreme court first examined the dismissal of the rescission counts on grounds of *res judicata*. The court found the second and third requirements for *res judicata*—same parties and same cause—were clearly met. *Rein*, 172 Ill. 2d at 335, 665 N.E.2d at 1204. The court noted that determining whether the first requirement for *res judicata* was met required a determination of whether the dismissal of the rescission counts in the first action was a final judgment. *Rein*, 172 Ill. 2d at 335, 665 N.E.2d at 1204.

The supreme court examined Supreme Court Rule 273 (134 Ill. 2d R. 273), which provides, subject to certain exceptions not applicable

here, that an involuntary dismissal operates as an adjudication on the merits. The supreme court found, pursuant to Rule 273, that the order dismissing the rescission counts on statute-of-limitations grounds was a final judgment on the merits. *Rein*, 172 Ill. 2d at 336, 665 N.E.2d at 1204-05. As a result, the final judgment in the first action barred any "subsequent actions involving the same claims or demands by the same parties or their privies," including matters which might have been—but were not—raised in the earlier suit. *Rein*, 172 Ill. 2d at 336, 665 N.E.2d at 1205.

The *Rein* court also examined the dismissal of the common-law counts on grounds of *res judicata* and found all three elements met: (1) the adjudication on the merits of the rescission count operated as an adjudication on the merits for purposes of *res judicata* even though there was no adjudication on the merits of the common-law counts (*Rein*, 172 Ill. 2d at 338, 665 N.E.2d at 1205); (2) identity of the cause of action existed because the common-law counts arose out of the same operative facts as the rescission counts (*Rein*, 172 Ill. 2d at 339, 665 N.E.2d at 1206); and (3) identity of the parties in both suits existed (*Rein*, 172 Ill. 2d at 338, 665 N.E.2d at 1206).

The *Rein* court also examined the doctrine against claim-splitting, explaining that "[t]he principle that *res judicata* prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more than one proceeding." *Rein*, 172 Ill. 2d at 339, 665 N.E.2d at 1206. The court noted that the rule against claim-splitting may be "relaxed where there has been an omission due to ignorance, mistake[,] or fraud, or where it would be inequitable to apply that rule." *Rein*, 172 Ill. 2d at 341, 665 N.E.2d at 1207. The court found nothing in the record alleging ignorance, mistake, or fraud in refiling the common-law counts in the second suit. *Rein*, 172 Ill. 2d at 341-42, 665 N.E.2d at 1207. The *Rein* court also examined whether any of the exceptions to the rule against claim-splitting identified in section 26(1) of the Restatement (Second) of Judgments applied. The court noted:

> "This section provides that the rule against claim-splitting does not apply to bar an independent claim of part of the same cause of action if: (1) the parties have agreed in terms or in effect that [the] plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the

equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." *Rein*, 172 Ill. 2d at 341, 665 N.E.2d at 1207, citing Restatement (Second) of Judgments §26(1), at 233-34 (1982).

The *Rein* court found that none of the exceptions to claim-splitting applied and that the policies favoring preclusion were not overcome. *Rein*, 172 Ill. 2d at 341, 665 N.E.2d at 1207.

### b. *Piagentini v. Ford Motor Co. (Piagentini I)*

In 2006, the First District decided *Piagentini v. Ford Motor Co.*, 366 Ill. App. 3d 395, 852 N.E.2d 356 (2006) (*Piagentini I*). In *Piagentini I*, the plaintiffs filed an eight-count complaint that contained four counts (strict liability and negligence) against Ford Motor Company (Ford). *Piagentini I*, 366 Ill. App. 3d at 396, 852 N.E.2d at 358. Each of the four counts against Ford contained several subparagraphs. The subparagraphs alleged that the vehicle was designed with insufficient stability, was susceptible to rolling over, and lacked an adequate seatbelt/occupant protection system. *Piagentini I*, 366 Ill. App. 3d at 396-97, 852 N.E.2d at 358.

In February 1999, the trial court entered an agreed order for partial summary judgment on the stability and rollover allegations contained in the subparagraphs in each of the counts. *Piagentini I*, 366 Ill. App. 3d at 397, 852 N.E.2d at 358 (the dismissal based on the plaintiff's failure to disclose any expert witnesses in support of those allegations). The court dismissed the complaint and granted the plaintiffs leave to replead claims pertaining only to allegations of a defective driver's seatbelt. *Piagentini I*, 366 Ill. App. 3d at 397, 852 N.E.2d at 358.

The plaintiffs filed a second amended complaint omitting the stability allegations that were the subject of the partial summary judgment. *Piagentini I*, 366 Ill. App. 3d at 397, 852 N.E.2d at 358. Thereafter, the plaintiffs voluntarily dismissed the remaining claims. *Piagentini I*, 366 Ill. App. 3d at 397, 852 N.E.2d at 358. The plaintiffs did not appeal the order granting partial summary judgment. *Piagentini I*, 366 Ill. App. 3d at 397, 852 N.E.2d at 358.

Within one year of the voluntary dismissal, the plaintiffs refiled their cause of action. *Piagentini I*, 366 Ill. App. 3d at 397, 852 N.E.2d at 358. After 3¹/₂ years, and 3 months prior to trial, Ford filed a motion for summary judgment invoking *res judicata*, asserting that the order granting partial summary judgment barred the refiled lawsuit. *Piagentini I*, 366 Ill. App. 3d at 397, 852 N.E.2d at 359. The trial court granted the motion. *Piagentini I*, 366 Ill. App. 3d at 398, 852 N.E.2d at 359.

On appeal, the First District Appellate Court reversed on the ground that the controlling authority at that time, *Rein*, was distinguishable because the *Rein* plaintiffs voluntarily dismissed for the purpose of appealing the dismissed rescission counts. *Piagentini I*, 366 Ill. App. 3d at 400-01, 852 N.E.2d at 361. The court in *Piagentini I* distinguished the facts of the case from *Rein* on the grounds that case was "totally free of claim-splitting." *Piagentini I*, 366 Ill. App. 3d at 401, 852 N.E.2d at 362. Specifically, the appellate court in *Piagentini I* found that the plaintiffs (1) asserted all the grounds of recovery in one lawsuit; (2) were not trying to circumvent any court ruling; and (3) did not try to challenge or appeal the order granting partial summary judgment; and (4) when the plaintiffs refiled their suit, they only sought recovery on the counts that had not been litigated. *Piagentini I*, 366 Ill. App. 3d at 401, 852 N.E.2d at 362.

### c. *Hudson v. City of Chicago*

In 2008, the Illinois Supreme Court decided *Hudson*, 228 Ill. 2d 462, 889 N.E.2d 210. In *Hudson*, the plaintiffs originally filed a two-count wrongful-death complaint alleging negligence and willful and wanton misconduct. *Hudson*, 228 Ill. 2d at 465-66, 889 N.E.2d at 212. After the trial court dismissed the negligence count on grounds of immunity, the plaintiffs voluntarily dismissed the willful-and-wanton-misconduct count. *Hudson*, 228 Ill. 2d at 466, 889 N.E.2d at 212.

Within one year, the plaintiffs refiled their willful-and-wanton-misconduct count. *Hudson*, 228 Ill. 2d at 466, 889 N.E.2d at 212. The trial court dismissed the refiled action, holding that *res judicata* barred the plaintiffs' action, and the appellate court affirmed. *Hudson*, 228 Ill. 2d at 466, 889 N.E.2d at 213. The Illinois Supreme Court also affirmed, noting that *Rein* "stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson*, 228 Ill. 2d at 473, 889 N.E.2d at 217 (also holding that "[o]nce the holding of *Rein* is understood, the analysis in the present case becomes an unremarkable exercise"). The *Hudson* court rejected that an attorney's subjective motivation in taking a voluntary dismissal affected the *res judicata* analysis. *Hudson*, 288 Ill. 2d at 478, 889 N.E.2d at 219. The *Hudson* court held that a plaintiff engages in claim-splitting when she voluntarily dismisses her suit after one part of the action has gone to final judgment and she attempts to later refile part of the action. *Hudson*, 228 Ill. 2d at 482, 889 N.E.2d at 222.

The *Hudson* court also examined the exceptions to claim-splitting and determined none applied. *Hudson*, 228 Ill. 2d at 474, 889 N.E.2d

at 217. The court reached this conclusion even though, as noted by the dissent, the plaintiffs voluntarily dismissed their first action because their attorney "died on the eve of trial." *Hudson*, 228 Ill. 2d at 501, 889 N.E.2d at 232 (Kilbride, J., joined by Fitzgerald, J., dissenting upon denial of rehearing).

### d. *Piagentini v. Ford Motor Co.*—*Piagentini II*

On appeal of *Piagentini I*, the Illinois Supreme Court issued a supervisory order directing the appellate court to vacate its judgment and reconsider in light of *Hudson*. *Piagentini v. Ford Motor Co.*, 228 Ill. 2d 552, 886 N.E.2d 1025 (2008) (nonprecedential supervisory order on denial of leave to appeal). Upon reconsideration, the appellate court again reversed and remanded the trial court's order granting summary judgment based on *res judicata*. *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 901 N.E.2d 986 (2009) (*Piagentini II*), *appeal denied*, 232 Ill. 2d 595 (2009).

In *Piagentini II*, the appellate court held that the February 1999 agreed order granting partial summary judgment on several subparagraphs was not a final order for two reasons. *Piagentini II*, 387 Ill. App. 3d at 893, 901 N.E.2d at 993. First, the court held that the "partial summary judgment was granted as to certain allegations within separate counts of the complaint but no actual count was dismissed." *Piagentini II*, 387 Ill. App. 3d at 893, 901 N.E.2d at 993. The *Piagentini II* court reasoned that the

> "dismissal of certain allegations under a single theory of recovery does not terminate litigation between the parties on the merits or dispose of the rights of the parties on a separate branch of the controversy. [Citation.] Rather, the dismissal of certain allegations under one theory of recovery merely determines which allegations under that theory are allowed to remain. [Citation.] Therefore, the agreed order granting partial summary judgment on certain allegations under the theory of negligence and certain allegations under the theory of strict liability was not final because allegations still remained under each base for recovery." *Piagentini II*, 387 Ill. App. 3d at 894, 901 N.E.2d at 994.

Second, the *Piagentini II* court noted that the trial court, when granting Ford's motion for partial summary judgment, also dismissed the complaint and granted the plaintiffs leave to replead. *Piagentini II*, 387 Ill. App. 3d at 893, 901 N.E.2d at 993. Therefore, because the trial court granted leave to replead, the partial summary judgment order was not final. See *Piagentini II*, 387 Ill. App. 3d at 895, 901 N.E.2d at 994 ("[a]n order dismissing a complaint but granting leave to replead is not final until the trial court enters an order dismissing the suit with prejudice"). Because an order granting the voluntary

dismissal is without prejudice, no order dismissing the suit with prejudice was ever entered in *Piagentini I*. *Piagentini II*, 387 Ill. App. 3d at 895, 901 N.E.2d at 995. Therefore, the nonfinal partial summary judgment motion never became final. *Piagentini II*, 387 Ill. App. 3d at 895, 901 N.E.2d at 995.

The *Piagentini II* court also found that, even assuming the February 1999 order was a final order that became immediately appealable when the plaintiffs voluntarily dismissed, one of the exceptions to claim-splitting—acquiescence—applied. *Piagentini II*, 387 Ill. App. 3d at 896, 901 N.E.2d at 995. The court found the defendants acquiesced to the refiling of the plaintiffs' claims by failing to object when the plaintiffs refiled their suit. *Piagentini II*, 387 Ill. App. 3d at 898, 901 N.E.2d at 997 (noting the defendants actively participated in the litigation for 3½ years before raising *res judicata*).

### 3. *Application of the Prevailing Case Law to This Case*

As noted above, three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) identity of cause of action, and (3) identity of parties or their privies. *Rein*, 172 Ill. 2d at 335, 665 N.E.2d at 1204. In this case, the second and third requirements, identity of cause of action and identity of parties, are clearly met. The causes of action in *Curtis I* and *Curtis II* involve the same accident. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883, 893 (1998) ("separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief"). Also, both cases involved the same parties: Bonnie, Margaret, and Philip.

Therefore, the issue in dispute is whether there was a final judgment on the merits rendered by a court of competent jurisdiction. The parties do not dispute that the orders entered in *Curtis I* were made by a court of competent jurisdiction. As a result, this court must determine whether a final judgment on the merits was entered in *Curtis I* that would operate as *res judicata* to the claims raised in the instant case.

A voluntary dismissal terminates an action in its entirety and renders all final orders immediately appealable. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503, 687 N.E.2d 871, 874-75 (1997). An "order is 'final' if it disposes of the rights of the parties, either on [an] entire case or on some definite and separate part of the controversy." *Dubina*, 178 Ill. 2d at 502, 687 N.E.2d at 874.

The parties identify essentially two orders in their analysis of whether a final judgment was entered in *Curtis I*: (1) the order granting summary judgment in favor of Margaret on the agency theory and (2) the order granting partial summary judgment in favor of Philip on the allegations that Philip operated his vehicle (a) with cannabis in his system and (b) in violation of the restriction for daylight driving. The parties dispute whether either of these orders was a final judgment on the merits for purposes of *res judicata*.

### a. The Order Granting Summary Judgment in Favor of Margaret Did Not Operate as *Res Judicata* Against Philip

The order granting summary judgment in favor of Margaret became final when Bonnie voluntarily dismissed *Curtis I*. See *Dubina*, 178 Ill. 2d at 503, 687 N.E.2d at 874-75 (holding that a voluntary dismissal terminates the action in its entirety and renders all final orders immediately appealable). Whether that final judgment operates as *res judicata* against a different defendant, Philip, is unclear.

The Illinois Supreme Court has held that if the basis of dismissal against one party bears no relationship to the merits of the case, it is "inappropriate to apply the doctrine of *res judicata* [against] another party to the action." *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 77, 642 N.E.2d 456, 460 (1994) (holding summary judgment in favor of the employee on statute-of-limitations grounds did not preclude the claim against the employer under a *respondeat superior* theory); see also *Leow v. A&B Freight Line, Inc.*, 175 Ill. 2d 176, 186-87, 676 N.E.2d 1284, 1288-89 (1997) (holding that the involuntary dismissal of defendant employee on statute-of-limitations grounds did not bar the claim against the defendant employer).

Similarly, in *DeLuna v. Treister*, 185 Ill. 2d 565, 582, 708 N.E.2d 340, 348 (1999), the Illinois Supreme Court held it would be unfair to allow the hospital defendant to avoid liability on the ground that its employee doctor obtained an involuntary dismissal where that dismissal did not otherwise absolve the employee doctor of fault. The *DeLuna* court held, citing *Leow*, that

> "where the party seeking to invoke the doctrine of *res judicata* is relying on the prior dismissal of a claim against a *different* party, then, *Leow* concluded, the prior dismissal must have caused the defendant to prepare to address the actual merits of [the] plaintiff's claim before the dismissal will be deemed 'on the merits.' " (Emphasis in original.) *DeLuna*, 185 Ill. 2d at 578-79, 708 N.E.2d at 347, citing *Leow*, 175 Ill. 2d at 184-86, 676 N.E.2d at 1287-88.

Moreover, "a judgment against a plaintiff based on a defense 'personal' to one defendant does not have a *res judicata* effect in subsequent litigation against a different defendant who might be vicariously li-

able." *DeLuna*, 185 Ill. 2d at 581, 708 N.E.2d at 348 (involving dismissal with prejudice of the employee doctor for failure to file a section 2—622 certificate), citing Restatement (Second) of Judgments §51, at 47-48 (1982).

■ In this case, the judgment against Bonnie and in favor of Margaret was based on a defense "personal" to Margaret. In her motion for summary judgment, Margaret asserted the undisputed facts rebutted the presumption that Philip was her agent and she his principal. The summary judgment in favor of Margaret did not address the merits of Bonnie's case against Philip. Therefore, while the dismissal was a dismissal on the merits as to Margaret (because it caused Margaret to prepare to address the actual merits of Bonnie's claim), the dismissal was based on a defense personal to Margaret and does not have a *res judicata* effect against a different defendant, Philip.

### b. The Order Granting Partial Summary Judgment in Favor of Philip on Subparagraphs Did Not Operate as *Res Judicata*

■ In *Curtis I*, the trial court also granted partial summary judgment in favor of Philip and against Bonnie on two of her allegations of negligence contained in subparagraphs of count I. Bonnie argues the partial summary judgment orders were not final because no actual count was dismissed. Bonnie cites the reasoning of *Piagentini II*, 387 Ill. App. 3d at 893-94, 901 N.E.2d at 993, in support of her position.

Philip argues that *Piagentini II* was poorly reasoned and should not be followed. Philip asserts that the reasoning used by the *Piagentini II* court—based on *Hull v. City of Chicago*, 165 Ill. App. 3d 732, 733, 520 N.E.2d 720, 721 (1987) (order dismissing subparagraphs was not a final and appealable order despite the Rule 304(a) finding by the trial court), and *Rice v. Burnley*, 230 Ill. App. 3d 987, 991, 596 N.E.2d 105, 107 (1992) (order dismissing certain counts was not final where the order did not determine the merits of a separate claim; appellate court lacked jurisdiction despite Rule 304(a) finding)—only applies in the context of a Rule 304(a) analysis, not the issue of "finality" in the context of *res judicata*. See 210 Ill. 2d R. 304(a) (providing a means for an appeal of a final judgment that does not dispose of an entire proceeding).

This court disagrees that finality in the context of Rule 304(a) (210 Ill. 2d R. 304(a)) and *res judicata* differs. An examination of finality in the context of Rule 304(a) is the same as any other analysis of whether an order is final or nonfinal. Before a trial court can enter a Rule 304(a) finding, the court must have entered an otherwise final order (final but for the remaining pending claims). A Rule 304(a) finding does not make an otherwise nonfinal order final and appealable.

*Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 416, 846 N.E.2d 153, 157 (2006). If the order granting summary judgment in favor of Philip was a nonfinal order, then the voluntary dismissal, which is without prejudice, did not make the order final. See *Dubina*, 178 Ill. 2d at 502, 687 N.E.2d at 874 (an "order is 'final' if it disposes of the rights of the parties, either on [an] entire case or on some definite and separate part of the controversy"); see also, *e.g.*, *Smith v. P.A.C.E.*, 323 Ill. App. 3d 1067, 1073, 753 N.E.2d 353, 359 (2001) (an appeal from a voluntary dismissal "does not vest [the appellate court] with jurisdiction to review the merits of other nonfinal orders entered prior to the order granting voluntary dismissal").

In *Piagentini II*, the appellate court held that the trial court's order granting partial summary judgment on certain subparagraphs of the counts, but without dismissing an entire count, was not a final order. *Piagentini II*, 387 Ill. App. 3d at 893, 901 N.E.2d at 993. Similarly here, Bonnie's claim against Philip involved only one theory of recovery—negligence. Within that theory, Bonnie alleged several ways Philip was negligent. The dismissal of two of those subparagraphs, which left other subparagraphs standing, did not "determine the merits of a separate cause of action or terminate any litigation between the parties." *Hull*, 165 Ill. App. 3d at 733, 520 N.E.2d at 721 (order that dismissed some, but not all, subparagraphs of negligence was not final; the order "merely determined which allegations of negligence would be allowed to remain"); see also *Rice*, 230 Ill. App. 3d at 992, 596 N.E.2d at 108 (the dismissal of some but not all counts did not determine or dispose of the rights of the parties on a separate cause of action where the plaintiff stated a single claim in multiple counts).

The case relied upon by Philip, *Estate of Cooper v. Humana Health Plan, Inc.*, 338 Ill. App. 3d 845, 789 N.E.2d 361 (2003), is distinguishable. In that case, the trial court entered partial summary judgment in favor of (1) one doctor and the hospital at which he worked on all allegations of negligence occurring on or after July 25, 1995, and (2) another hospital as to all allegations of negligence by any agent other than its alleged agent, another defendant doctor. *Cooper*, 338 Ill. App. 3d at 846, 789 N.E.2d at 363. The court denied the remaining motions for summary judgment. *Cooper*, 338 Ill. App. 3d at 846, 789 N.E.2d at 363. After the plaintiff voluntarily dismissed and refiled the action, the trial court granted the defendants' motions to dismiss on grounds of *res judicata*. *Cooper*, 338 Ill. App. 3d at 846-47, 789 N.E.2d at 363. The appellate court held that the orders granting partial summary judgment and the order denying summary judgment in the original action were final orders that operated as *res judicata* in the refiled suit. *Cooper*, 338 Ill. App. 3d at 849-50, 789 N.E.2d at 365-66.

Unlike the situation here, however, the summary judgment orders in *Cooper* did determine the merits of separate causes of action. In *Cooper*, the trial court entered partial summary judgment on definite and separate parts of the controversy—alleged negligence occurring after a particular date and by particular agents. *Cooper*, 338 Ill. App. 3d at 846, 789 N.E.2d at 362-63. In contrast here, Bonnie alleged Philip acted negligently in one of many ways at the same time and during the same incident. The order granting partial summary judgment did not terminate any litigation on a *distinct* portion of Bonnie's claim. The order only dismissed several allegations of negligence, not the entire negligence cause of action.

In addition, when the trial court entered the partial summary judgment order, the court also granted Bonnie leave to file an amended complaint. This also supports finding that the order was not a final order. See *Piagentini II*, 387 Ill. App. 3d at 895, 901 N.E.2d at 994 (finding that order granting partial motion for summary judgment was not final on the additional ground that the trial court also dismissed the complaint and granted the plaintiffs leave to replead).

Philip argues that finding the order granting partial summary judgment nonfinal will result in absurd results and encourage forum shopping. Philip notes that under such rule, Bonnie can avoid the rulings in *Curtis I* by voluntarily dismissing and repleading those allegations in *Curtis II*.

However, as a nonfinal ruling, the order granting partial summary judgment was subject to revision at any time in *Curtis I*. See, *e.g.*, 210 Ill. 2d R. 304(a) (providing that in the absence of a Rule 304(a) finding, any judgment adjudicating fewer than all the claims or all the parties is not enforceable or appealable and is "subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties"). Moreover, Supreme Court Rule 219(e) prevents a party from circumventing certain orders by voluntarily dismissing:

> "A party shall not be permitted to avoid compliance with discovery deadlines, orders[,] or applicable rules by voluntarily dismissing a lawsuit. In establishing discovery deadlines and ruling on permissible discovery and testimony, the court shall consider discovery undertaken (or the absence of same), any misconduct, and orders entered in prior litigation involving a party." 210 Ill. 2d R. 219(e).

See also *Smith*, 323 Ill. App. 3d at 1075, 753 N.E.2d at 360 (holding that Supreme Court Rule 219(e) "discourages the abuse of voluntary dismissals by attaching adverse consequences when the plaintiff refiles the action"). Bonnie has not been placed in a better position due

to voluntarily dismissing than if she had not voluntarily dismissed the first action.

### c. Philip Acquiesced to the Filing of *Curtis II*

Bonnie alternatively argues that Philip acquiesced to the filing of *Curtis II* by failing to object. Philip argues that Bonnie forfeited the argument that Philip acquiesced by failing to raise it in the trial court or on appeal in her opening brief (210 Ill. 2d R. 341(h)(7)). Bonnie argues she has not forfeited the issue because (1) acquiescence was not the issue being appealed but is a legal finding this court can make to show that *res judicata* does not apply and (2) she sought leave to file a supplemental brief.

■ Regardless, "[f]orfeiture of an issue is a limitation on the parties and not on this court." *Springfield Heating & Air Conditioning, Inc. v. 3947-55 King Drive at Oakwood, LLC*, 387 Ill. App. 3d 906, 910, 901 N.E.2d 978, 983 (2009). This court may overlook forfeiture when necessary to obtain a just result. *In re Marriage of Holthaus*, 387 Ill. App. 3d 367, 378, 899 N.E.2d 355, 364 (2008). This court declines Philip's request to apply the forfeiture rule and chooses to address on the merits whether an exception to the claim-splitting rule should apply here. See, *e.g., Hux v. Raben*, 38 Ill. 2d 223, 224, 230 N.E.2d 831, 832 (1967).

On the merits, this court finds that Philip's failure to timely object when Bonnie filed *Curtis II* constituted acquiescence. See *Piagentini II*, 387 Ill. App. 3d at 898, 901 N.E.2d at 997. For 3½ years after Bonnie refiled, Philip litigated the case without objection and without raising *res judicata* as an affirmative defense.

Philip attempts to explain his delay in raising *res judicata* by noting that the *Piagentini I* case—which limited *Rein* to situations where the plaintiff attempted to appeal the issues from the first lawsuit—precluded application of *res judicata* in this case until *Hudson* was decided in 2008. Philip filed a motion for summary judgment on grounds of *res judicata* shortly after entry of the *Hudson* decision.

However, *Hudson* relied extensively on *Rein*, going as far as to note that the holding in *Hudson* could be created by merely substituting into the *Rein* holding the *Hudson* parties' names and the types of counts. *Hudson*, 228 Ill. 2d at 473, 889 N.E.2d at 217. For 3½ years, Philip neither raised *res judicata* as an affirmative defense nor otherwise raised the issue before the trial court. Therefore, Philip acquiesced in the filing of *Curtis II*.

### C. Bonnie Forfeited Claim That the Trial Court Abused Its Discretion by Sanctioning Bonnie's Attorney

■ Bonnie also argues that the trial court abused its discretion by *sua sponte* awarding sanctions because her attorney was not present

at the hearing on the motion for summary judgment. Philip asserted in his brief on appeal that he had "no response to [p]laintiff's argument that the trial court erred in awarding sanctions."

Bonnie's brief contains no citation to relevant authority or even the appropriate standard of review. Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)) requires that argument in an appellant's brief include citation to the authorities relied upon and that points not argued are forfeited. See also *Vernon Hills III Ltd. Partnership v. St. Paul Fire & Marine Insurance Co.*, 287 Ill. App. 3d 303, 310-11, 678 N.E.2d 374, 379 (1997). Consequently, this argument is forfeited.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's order denying the motion for substitution of judge and sanctioning Bonnie's attorney and reverse the court's order granting summary judgment in favor of Philip and remand for further proceedings.

Affirmed in part and reversed in part; cause remanded.

KNECHT and POPE, JJ., concur.